Jesus MUNIZ, et al., Plaintiffs,

v.

Edwin MEESE, III, Defendant.

Civ. A. No. 85–2300.

United States District Court, District of Columbia.

March 11, 1987.

Irving Kator, Douglas B. Huron, Amy E. Wind, Kator, Scott & Heller, Washington, D.C., for plaintiffs.

Stuart H. Newberger, Asst. U.S. Atty., Washington, D.C., Lynn Goldstein, Ellen Harrison, Philip Shebest, Office of Chief Counsel, Drug Enforcement Admin., of counsel, for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

In this Title VII action (42 U.S.C. § 2000e *et seq.*) the plaintiff class, Special Agents of the Drug Enforcement Agency (DEA) who are Hispanics, allege discriminatory practices against the DEA Hispanic agents.[1] Following class certification, the parties agreed in principle that the government would make certain information available as part of the discovery process, including, as is not unusual in this type of litigation, machine readable computer tapes concerning personnel data on DEA Special Agents. The parties also agreed on a protective order that would limit access to the material to plaintiffs' lawyers, support staff, and experts. Such a protective order is likewise typical of Title VII class litigation to which an agency of government is a party.

However, following these understandings, the government added a new condition: that as a prerequisite to the receipt of any of this material, plaintiffs' lawyers and their support staffs submit to FBI and other checks and investigations.[2] Indeed, notwithstanding the command of Rule 26, Fed.R.Civ.P., and the responsibility of the Court to decide disputes that may arise thereunder (Rule 37, Fed.R.Civ.P.), the government states flatly that "[i]f plaintiffs' counsel are unwilling to submit to the [security investigation], the privileged information *will not be disclosed to them* " (emphasis added).[3] Pending before the Court is plaintiffs' motion to compel.

The information plaintiffs seek through their motion includes, generally, the employment history of each Hispanic DEA Special Agent, his or her permanent and temporary duty assignment, the dates of any promotions, and comparability information concerning non-Hispanic Special Agents—all of it typical and obviously necessary Title VII information when a case of discriminatory treatment is sought to be established. The government's position, supported by several affidavits, is that the information is privileged law enforcement information, that its release could harm DEA personnel, and that such release would reveal sensitive DEA law enforcement methods, tactics, and confidences. The government makes these claims of harm notwithstanding that plaintiffs' counsel have expressed their willingness to agree to a broad and wide-ranging protective order (*see infra* ).

The Court concludes that the government is not entitled, as a condition precedent to responding to legitimate discovery under the Federal Rules of Civil Procedure, to subject opposing counsel to FBI and other checks and investigations. This result follows both because the government has cited no relevant statutory or decisional law in support of its extraordinary position and from an exercise of the Court's

1. The plaintiff class seeks an injunction barring the DEA from allocating work assignments in a discriminatory fashion, ordering the DEA to develop goals and timetables for hiring Hispanics, and ordering backpay and benefits to all former Hispanic agents who have been victims of discrimination.

2. According to its papers, the investigations contemplated by the government include, in addition to an FBI check, security checks by the Office of Personnel Management, a military service check, a credit check, and a check to determine any involvement of plaintiffs' counsel with illegal substances or with federal or local law enforcement agencies. Defendant's Opposition at 9–10.

3. Defendant's Opposition at 2. Similarly, the government's papers note that "DEA insists" on background investigations of all persons who will have access not only to classified material but also to such information that is "DEA sensitive," whatever that may mean. Defendant's Opposition at 10. Here again, no mention is made of statutory or judicial authority for the determination of papers as "DEA sensitive"— only on DEA's own decision as if, in a discovery dispute pending in court, that agency's unilateral position had the force of law.

discretion following a balancing of the interests involved.

First. Throughout its papers, the government relies on what it calls a law enforcement privilege, but it cites *no* Act of Congress and *no* judicial precedent establishing or recognizing such a privilege in the context of civil discovery. What the government does cite are essentially two types of precedents.

One of these is *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and its progeny, which have not the remotest relationship to the issue under consideration here: those decisions hold that government counsel may, under appropriate circumstances in criminal cases, refuse to disclose the identity of confidential informants. They do not hold or intimate, even by the most generous reading, that the government has the right to subject opposing counsel in a civil case to FBI and other investigations, and to deprive the opposing party of that counsel if the government's lawyers are not satisfied with the investigation's results.[4]

The second type of precedent upon which the government relies is *Halkin v. Helms,* 598 F.2d 1 (D.C.Cir.1978). That decision is likewise inapposite here, for it involved the state secrets privilege invoked by the Secretary of Defense with respect to the highly sensitive subject of international communications acquired by the National Security Agency. That extraordinary privilege is of course not implicated in this case. Beyond that, since the Court of Appeals made clear in *Halkin* that the state secret privilege is "absolute" and "heads the list" of privileges recognized by the courts, 598 F.2d at 7, its decision in that case does not lend any support to an attempt to keep from counsel in Title VII litigation unclassified personnel information.

Second. But, says the government, it is entitled at a minimum to have the Court balance the governmental privilege "to withhold disclosure of the identity of informers" [5] against the interest of plaintiffs to be represented by counsel of their own choice. The Court is reluctant to engage in such a balancing lest it provide even a shred of legitimacy to the government's assertion that it has the power to override the choice of counsel of a party with which it is engaged in litigation.[6] Accordingly, nothing the Court states here should be regarded as clothing the government's position with such legitimacy. Nevertheless, in order to resolve all possible doubts in this particular case, the Court has engaged in such balancing and it has concluded that the government fares no better on that basis.

The government's memorandum expresses a concern that any "inadvertent" release of information by plaintiffs' counsel would threaten the DEA's ability to conduct its operations as well as the safety of DEA personnel. Further, according to that memorandum, anyone possessing the employment histories of DEA agents could piece together a mosaic of that agency's worldwide structure, capabilities, and enforcement activities.[7] Finally, the govern-

---

**4.** To be sure, the government implies that it would not "disqualify" opposing counsel from further role in the case if the FBI check turned out to be positive (Defendant's Opposition at 12 note 9). If that be so, the purpose of the FBI check becomes even more baffling. Beyond that, the authority of government counsel to "disqualify" their opponents on any basis has not been cited and is not readily apparent under our system of jurisprudence.

**5.** The identity of informers is no more involved here than any of the other categories of individuals and privileges cited by the government in support of its claims.

**6.** It is not necessary here to explore or to decide whether, and if so under what circumstances, private counsel's name may be checked against law enforcement files as a prerequisite to being furnished documents with a very high degree of security classification affixed according to explicit statutory authority.

**7.** It is not explained why respected members of the Bar would want to furnish DEA employment histories gathered for use in a Title VII lawsuit to dangerous drug dealers. It is even less credible that information as to when particular Hispanic agents were promoted in relation to their non-Hispanic counterparts would provide anyone with the ability to determine DEA's

ment points out in some detail that all applicants for DEA employment are required to undergo a background investigation,[8] as are DEA support personnel and contract personnel.

To consider the last point first, the Court is perplexed as to what analogy may be drawn between individuals working for the government whom the government can "clear" any way it wishes (consistent with the Constitution and with legislative or similar authority) and lawyers in private practice retained by individuals litigating against the government. It may be that in some countries (*e.g.*, the Soviet Union) lawyers representing those litigating against the government are state functionaries or civil servants; in this constitutional democracy, in this legal system which lives by the adversary process, they are not.

The remaining interests cited by the government may well be worthy of consideration if it is appropriate to strike a balance. However, plaintiffs have voluntarily agreed to far-reaching prophylactic measures to protect those interests. Thus, plaintiffs have agreed (1) that they will not seek the identities of the agents about whom information is sought; (2) that the notice to members of the class of plaintiffs may be mailed by the government rather than by plaintiffs' counsel; (3) that assign-

ment locations may be redacted on all documents and replaced with coded symbols (thereby ensuring security yet allowing plaintiffs to determine patterns of assignments); and (4) that they are prepared to discuss with counsel for the government any other means of protecting information deemed sensitive.

The government does not regard any of that as enough:[9] plaintiffs' counsel [10] must be screened by the FBI and by the other government bureaus listed above. In view of the lack of judicial precedent and the concessions voluntarily made by plaintiffs, that position is so extreme in the context of this case that it is more appropriately regarded as a means to disable opposing counsel in this case or to establish a precedent for a general program to investigate lawyers litigating against the government[11] than as a measure actually necessary to safeguard legitimate interests.

The Federal Rules of Civil Procedure plainly entitle plaintiffs to the information they are seeking, and the assurances and conditions to which plaintiffs have voluntarily agreed are amply sufficient to protect such interests of the defendant as are legitimate.

Accordingly, it is this 11th day of March, 1987

"worldwide structure, capabilities and enforcement activities."

8. The government concedes that with respect to government employees and applicants for such employment this is done pursuant to an Executive Order.

9. Although the government says that it has no reason to believe that plaintiffs' counsel are not trustworthy (Defendant's Opposition at 12), it assumes that they are likely to violate the Court's protective order. Such an order, says the government, "serves only to punish counsel after an unauthorized disclosure has occurred". Defendant's Opposition at 12.

10. As plaintiffs correctly point out, the government has adduced no probable cause, or any reason at all, to believe that the counsel are in any way untrustworthy. Plaintiffs' Reply Memorandum at 2. In fact, one of plaintiffs' principal counsel served recently (1977–1980) as Senior Associate Counsel to the President of the

United States, the other from 1969 to 1975 as Assistant Executive Director and Assistant to the Chairman of the Civil Service Commission (where presumably they underwent rigorous security checks).

11. Many government departments can be said to perform sensitive tasks (*e.g.*, the military departments, those dealing with foreign affairs, agencies involved in the administration of justice, Bureau of the Census). Thus, if the government succeeds in qualifying or disqualifying opposing counsel in this Title VII case by way of the method here chosen, it can do so in most other litigation in which discrimination on account of race, sex, national origin, handicap, or age is being alleged. It is more than a little ironic that the government seeks to use the enforcement of a statute designed to protect the civil rights of citizens as a vehicle for sanctioning the violation of civil liberties that is implied by a government intrusion into their right to select and to be represented by counsel of their choice.

ORDERED that plaintiffs' motion to compel be and it is hereby granted; and it is further

ORDERED that defendant shall without delay furnish to plaintiffs' counsel the information previously agreed upon between the parties, including machine readable computer tapes on DEA Special Agents from the Department of Justice's JUNIPER system, subject to the assurances and the protective order previously voluntarily agreed upon by plaintiffs' counsel; and it is further

ORDERED that the production of the information shall not be contingent upon the submission by plaintiffs' counsel or their staffs to FBI or other government-conducted or government-sponsored examinations, investigations, or checks.