**Jesus MUNIZ, et al., Plaintiffs,**

v.

**Edwin MEESE, III, Defendant.**

No. 85–2300.

United States District Court,
District of Columbia.

Aug. 23, 1988.

Douglas B. Huron, Kator, Scott & Heller, Washington, D.C., for plaintiffs.

Curtis E. Hall, Asst. U.S. Atty., Washington, D.C., for defendant.

MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

This case presents the sorry spectacle of sustained indifference, possibly amounting to active obstruction, by the Drug Enforcement Administration (DEA), in its response to a lawsuit alleging discrimination against Hispanics, to the legitimate discovery demands of plaintiffs, and to judicial orders issued to enforce these demands. The Court is now taking steps to end this behavior.

Plaintiffs are Hispanic special agents at the DEA who claim that they were treated less favorably than other special agents, in violation of Title VII. 42 U.S.C. § 2000e *et seq.* Their complaint filed in 1985 includes allegations of discrimination in promotion and assignment. On the same day that plaintiffs filed their complaint, they also requested employment data, including career histories of Hispanic and other agents. While discovery was held in abeyance pending class certification (which the Court granted on September 9, 1986) plaintiffs have attempted without success since then, time and again, to secure this necessary information. Two years after the class has been certified, and after issuance of orders compelling discovery of this information, the plaintiffs are still without the necessary data. Until this information is provided accurately and in full, the class cannot be notified and plaintiffs cannot prepare their case. There is no question but that the Drug Enforcement Administration has been guilty of undue and protracted delay. This stalling must end.

I

Eighteen months ago, in response to plaintiffs request for the necessary employment data, DEA made the preposterous contention that it would not produce the information unless plaintiffs' counsel and their staffs submitted to a wide range of FBI and other government-conducted or government sponsored examinations, investigations, and checks, even though plaintiffs had agreed to prophylactic measures to protect the government's security interests. In response to plaintiffs' first motion to compel, the Court ordered on March 11, 1987, that DEA "shall without delay furnish to plaintiffs' counsel the information previously agreed upon between the parties, including machine readable computer tapes on DEA special agents from the Department of Justice's JUNIPER system." [1]

1. Prior to that time, DEA had agreed to provide data, recorded on the JUNIPER tape, on all

*Muniz v. Meese,* 115 F.R.D. 63, 67 (D.D.C. 1987).

Following the issuance of that order, DEA did produce a JUNIPER tape in early May 1987. However, one month later, the agency acknowledged that the tape was defective and would have to be replaced. By mid-July of the same year, plaintiffs realized that a replacement tape furnished by DEA was likewise defective. Because DEA did not promptly provide a revised, third version of the JUNIPER tape, plaintiffs on October 15, 1987, filed a second motion to compel.

At a status conference held on November 6, 1987, counsel for DEA assured the Court that corrected data, along with a means to interpret it, would be provided to plaintiffs immediately. At that time, plaintiffs correctly believed that the July 1987 tape did not contain all relevant data elements in the JUNIPER system. What they did not know, and what they did not learn until they had spent much time and resources, however, was that DEA's representation that the tape contained complete career histories for all agents who appeared on it, was also inaccurate. In fact, the information on the tape only went back in time to 1982, so that the tape reflected at best only the last six years of employment for all employees on the employment rolls on or after June 4, 1982.

While waiting for the additional data elements promised by DEA at the November 6, 1987 status conference, plaintiffs' expert began analyzing the data as best he could. By December 1987, that expert was concerned that either the tape did not contain complete career histories or that he was unable to interpret the data properly because DEA had not provided an interpretive mechanism. Accordingly, on December 11, 1987, plaintiffs hand-delivered a letter to government counsel stating that "it may be that all relevant data was not pro-

vided, or it is possible that we are not interpreting the data properly. This is something that needs to be straightened out." [2]

Over a month passed, and the government finally responded advising plaintiffs' expert that he should consult with DEA's expert about his problems with the tape. After the experts met, plaintiffs advised government counsel on February 16, 1988, regarding the data elements needed to be included on the third version of the JUNIPER tape, and they urged the DEA to include early promotion data which had been omitted from earlier versions of the tape.[3]

DEA sat on this request for two months before it asked plaintiffs, on April 19, 1988, for information identical to that provided to the agency in plaintiffs' February letter. In response, plaintiffs wrote yet another letter to DEA, criticizing that dilatory behavior and demanding that the revised JUNIPER tape be furnished by May 13, 1988, accompanied by an explanation as to why the tape provided by DEA in July 1987 appeared to have fewer promotion actions per employee than expected.

On May 26, 1988, DEA informed plaintiffs for the first time that, contrary to its earlier representation, the JUNIPER tape received by plaintiffs in July 1987 did not contain complete career histories. This letter contained the promise that the agency would furnish a corrected tape by June 21, 1988. That promise, like the previous ones, was not kept; the tape was offered one month later than promised, without the slightest explanation or apology.

## II

As a consequence of all this dilatory and obstructive behavior, plaintiffs' expert had by May of this year spent $7,200.00 analyzing what turned out to be faulty data. He

---

Special Agents on DEA's rolls at any time from June 4, 1982, until the time the tape was produced. This data would include complete career histories for all individuals on the tape, necessary to compare average time-in-grade for Hispanic special agents with other special agents.

2. Letter of December 11, 1987 from Douglas B. Huron, Kator, Scott & Heller, to Stuart Newberger, Assistant United States Attorney.

3. Letter of February 16, 1988, from Douglas B. Huron, Kator, Scott & Heller, to Curtis Hall, Assistant United States Attorney.

had prepared time-in-grade analysis based on the JUNIPER data furnished to plaintiffs in July 1987, recognizing that marginal corrections might have to be made when the tape DEA agreed to provide in November 1987 finally arrived.[4] Because the July 1987 tape was fundamentally flawed, however, plaintiffs' expert estimates that only about twenty percent of his work is salvageable, most of it required to create a computer program to analyze the data. The remaining eighty percent of his efforts, or $5,760.00, is wasted. The government must, of course, pay for this exercise in futility.

Although notice to the class is not mandatory for a class certified under Fed.R. Civ.P. 23(b)(2), it is permitted. Long ago in this litigation the parties agreed and informed the Court that notice is appropriate in this case. For security reasons, DEA was hesitant to release the addresses of the class members, and plaintiffs therefore agreed in the fall of 1986 that DEA would transmit to the class members a notice approved by the Court. No notice has been sent because, after two years, the members of the class have yet to be identified.

DEA submitted to plaintiffs on November 6, 1987, what it denominated as a class list, but it acknowledges that the list omits several agents who appear on the JUNIPER tape and vice versa. The agency has not reconciled this discrepancy; it has merely noted the variances and proclaimed that the list is "largely accurate." The November 1987 list obviously cannot be used because it does not coincide with the list of those Hispanic agents whose employment data is recorded on the tape. The final class list must be consistent with the latest JUNIPER tape data, after it has been corrected for racial and ethnic mis-identifications.[5]

DEA has stated that it "approved plaintiffs' proposed notice long ago."[6] That being so, the parties will be directed to submit the proposed notice to the class promptly for the Court's approval.

For the foregoing reasons, it is this 23rd day of August, 1988

ORDERED that defendant shall immediately correct errors in ethnic and racial identification of special agents appearing on the JUNIPER tape provided to plaintiffs' on July 22, 1988; and it is further

ORDERED that the defendant shall make a class list consistent with the names of agents who appear on the JUNIPER tape after it has been corrected as ordered above, and provide such list to plaintiffs within ten days of the issuance of this order; and it is further

ORDERED that within ten days of the issuance of this order the parties shall submit to the Court for its approval the proposed notice to the class; and it is further

ORDERED that defendant shall pay to plaintiffs the following amounts as sanctions, pursuant to Rule 37, Fed.R.Civ.P.: $5,760.00 in expenses related to plaintiffs' expert witness and $7,097.50 in attorneys' fees; and it is further

ORDERED that defendant shall, within ten days of the issuance of this order, identify an official of the Drug Enforcement Administration who shall be responsible for monitoring and carrying out the Court's orders on behalf of defendant, and against whom the Court may proceed in the event that the agency continues with its obstructive behavior.

---

4. The elements of data which were missing from the July 1987 JUNIPER tape and which were to be provided on the revised tape apparently did not affect career histories. Although plaintiffs suspected that the data concerning DEA promotions of agents was incomplete, they did not know how incomplete and they certainly did not expect that the data provided on the tape would be so lacking as to render their expert's analysis virtually useless.

5. The tape submitted to plaintiffs on July 22, 1988, as a result of plaintiffs' current motion to compel contains known errors with respect to racial and ethnic codes. See Letter of July 22, 1988, from Joy Waltzer Price, Supervising Analyst, Longbranch Research Associates, Inc. (defendant's expert), to Mary Dunbar, of Charles R. Mann Associates, Inc. (plaintiffs' expert).

6. Defendant's supplemental opposition to plaintiffs' motion to compel and for sanctions at 2.